**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 7:26-cv-00273-DC |
| APPLE INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT APPLE INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ....1

FACTUAL BACKGROUND ....3

A. Collision's Direct Infringement Allegations ....3

B. Collision's Willful Infringement Allegations ....5

C. Collision's Indirect Infringement Allegations ....6

D. Apple Notified Collision Of The Insufficiencies In Collision's Complaint, But Collision Refused To Amend Its Deficient Allegations. ....7

LEGAL STANDARD ....7

A. Motion to Dismiss ....7

B. Direct Infringement ....7

C. Willful Infringement ....8

D. Induced Infringement ....8

ARGUMENT ....9

I. THE COMPLAINT FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT ....9

A. Collision's Allegations About Third Party Functionality Are Speculative And Not Sufficiently Linked To Apple's Accused Products ....9

B. Collision's Complaint Does Not Allege Facts Sufficient To Show How The Accused Products Meet All Claim Limitations, And Therefore Does Not State A Plausible Claim Of Infringement. ....12

II. THE COMPLAINT FAILS TO STATE A CLAIM FOR WILLFUL INFRINGEMENT ....15

A. The Complaint Does Not Plausibly Allege That Apple Knew The Accused Products Supposedly Infringed Any Asserted Patent. ....15

B. The Complaint Does Not Plausibly Allege Pre-Suit Willful Blindness. ....17

C. The Complaint Fails To State A Claim For Post-Suit Willfulness. ....18

**TABLE OF CONTENTS (cont'd)**

**Pages**

III. THE COMPLAINT FAILS TO STATE A CLAIM FOR ACTIVE INDUCEMENT OF INFRINGEMENT. ....................19

CONCLUSION....................20

## TABLE OF AUTHORITIES

**Pages**

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7, 20

*Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*,
661 F. Supp. 3d 643 (W.D. Tex. 2023)....................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*BillJCo, LLC v. Apple Inc.*,
583 F. Supp. 3d 769 (W.D. Tex. 2022)....................8, 15, 16, 17

*Bot M8 LLC v. Sony Corp. Am.*,
4 F. 4th 1342 (Fed. Cir. 2021)....................7, 11, 12

*Datanet LLC v. Dropbox Inc.*,
No. 6:22-CV-01142-OLG-DTG, 2023 WL 7118041 (W.D. Tex. Oct. 27, 2023)....................18

*De La Vega v. Microsoft Corp.*,
No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)....................12

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)....................17

*GreatGigz Solutions, LLC v. Freelancer Ltd.*,
No. 6:20-CV-00738-ADA, 2022 WL 22860429 (W.D. Tex. July 1, 2022)....................17

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026)....................2, 8, 19

*Huang v. Amazon.com, Inc.*,
No. 2024-1428, 2025 WL 314718 (Fed. Cir. Jan. 28, 2025)....................1, 11

*Interactive Content Engines, LLC v. Apple Inc.*,
No. 7:25-CV-00353-DC, 2026 WL 2837235 (W.D. Tex. Aug. 5, 2026) .................... *passim*

*Kearns v. Chrysler Corp.*,
32 F.3d 1541 (Fed. Cir. 1994)....................18

*LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*,
2023 WL 2290291 (W.D. Tex. Feb. 27, 2023)....................10, 11

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*,
545 U.S. 913 (2005) ....................2, 8, 19

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
No. 6:20-CV-00876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ....................8

*Skysong Innovations, LLC v. CrowdStrike, Inc.*,
No. 7:25-CV-00040-DC-DTG, 2026 WL 454991 (W.D. Tex. Feb. 2, 2026),
No. MO:25-CV-00040-DC, 2026 WL 451426 (W.D. Tex. Feb. 17, 2026) ....................18

*VDPP, LLC v. Gen. Motors Co.*,
No. 1:23-CV-00956-RP, 2024 WL 4958307 (W.D. Tex. July 22, 2024) ....................14

*Vervain, LLC v. Micron Tech., Inc.*,
No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ....................13, 15

**FEDERAL STATUTES**

35 U.S.C. § 271(b) ....................19

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................1, 7

**TABLE OF EXHIBITS**

| Ex. # | Description |
| --- | --- |
| 1 | Correspondence dated August 20, 2026 from Defendant's counsel to Plaintiff's counsel |
| 2 | Correspondence dated September 2, 2026 from Plaintiff's counsel to Defendant's counsel |
| 3 | Correspondence dated September 24, 2026 from Defendant's counsel to Plaintiff's counsel |
| 4 | Press release titled *Qualcomm and Apple agree to drop all litigation* dated April 16, 2019, also available at https://www.apple.com/newsroom/2019/04/qualcomm-and-apple-agree-to-drop-all-litigation/, cited in Exhibits E, F, and G attached to the Complaint (Dkt. 1) |
| 5 | Macworld, *iPhone C1 modem: What is it, what does it do, and where Apple go from here?* dated February 26, 2025, also available at https://www.macworld.com/article/2618003/apple-iphone-c1-5g-modem-faq.html, cited in Exhibits E, F, and G attached to the Complaint (Dkt. 1) |

All emphasis herein is added unless otherwise indicated.

# INTRODUCTION

Defendant Apple Inc. ("Defendant" or "Apple") moves to dismiss Plaintiff Collision Communications, Inc.'s ("Collision") claims for: (1) direct infringement; (2) willful infringement; and (3) induced infringement. Collision's Complaint (Dkt. 1) fails to plead facts sufficient to meet the legal standards for each of those claims, and accordingly Collision's allegations fail to meet the pleading standards under Fed. R. Civ. P. 12(b)(6). The Court should dismiss Collision's direct infringement claims, and therefore this action. If direct infringement is not dismissed, the Court should dismiss Collision's insufficient allegations of willful and indirect infringement, for the reasons explained below.

***First***, the Court should dismiss Collision's direct infringement claims because Collision does not allege facts showing that any Apple accused product meets all claim limitations of any claim of any of the four Asserted Patents.[1] Collision asserts method claims in the Complaint. Dkt. 1, Exs. E, F, G, H. For three of the Asserted Patents—the '464, '439, and '665 patents—Collision alleges that unspecified "Qualcomm chipsets," not Apple hardware, perform the claimed methods. But Collision never identifies which Qualcomm chipsets allegedly perform those methods, or which of those Qualcomm chipsets are supposedly incorporated into the Apple accused products. Collision's allegations "simply conclude[], with no factual basis, that the supposedly infringing" Qualcomm chipset "exists in each of the accused products," which is insufficient to survive a motion to dismiss. *Huang v. Amazon.com, Inc.*, No. 2024-1428, 2025 WL 314718, at *3 (Fed. Cir. Jan. 28, 2025).

Additionally, for all four Asserted Patents, Collision fails to explain how the Apple accused products meet the recited claim limitations. Each of Collision's attached claim charts follows the

[1] The Asserted Patents are U.S. Patent Nos. 7,092,464 (the "'464 patent"); 7,110,439 (the "'439 patent"); 7,218,665 (the "'665 patent"); and 9,635,190 (the "'190 patent").

same formulaic and conclusory pattern: they recite and rephrase the claim language and then append columns of screenshots with no explanation of how those screenshots allegedly show infringement of each claim limitation. In at least one instance, Collision's chart fails to cite any supporting evidence for a limitation, merely reciting the claim language and concluding that the limitation is met. Collision's proffer amounts at most to "screenshots of evidence without an explanation of how the evidence demonstrated that a claim limitation was met" and does not adequately plead direct infringement, and therefore dismissal is appropriate. *Interactive Content Engines, LLC v. Apple Inc.*, No. 7:25-CV-00353-DC, 2026 WL 2837235, at *5 (W.D. Tex. Aug. 5, 2026) (Counts, J.).

***Second***, Collision's claims of willful infringement should be dismissed because Collision does not allege facts plausibly showing that Apple had the requisite knowledge of infringement—whether by actual notice or willful blindness—before Collision's Complaint. Collision points generally at discussions between it and Apple occurring over a period of years, but it does not plead specific statements, discussions, or facts that supposedly support its claims. Collision's allegations amount, at most, to a showing that Apple knew generally that the Asserted Patents existed, but Collision never connects the dots to show that Apple supposedly believed that any specific accused product infringed any specific Asserted Patent. And Collision does not allege any facts showing that Apple took "deliberate action" to avoid learning of any supposed infringement. Collision's conclusory allegations are precisely the kind that courts in this District regularly dismiss.

***Third***, Collision's claims of induced infringement fail because Collision does not allege facts plausibly showing any active inducement by Apple. Induced infringement requires showing that the alleged inducer takes "active steps . . . to encourage direct infringement." *Hikma Pharms.*

*USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 590 (2026) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*, 545 U.S. 913, 936 (2005)). Collision's Complaint alleges no such active steps. Rather, Collision alleges only that Apple engages in routine development and marketing of its products, coupled with speculation that third parties may then infringe. Collision identifies no specific statement or act that supposedly encouraged infringement, as required for an active inducement claim.

Collision is well aware of the deficiencies of its Complaint. Before filing this motion, Apple informed Collision, via correspondence, of the inadequacies of its pleadings. Collision chose not to amend. Because Collision could have amended its Complaint to further and more specifically articulate its claims of infringement and address these other issues, but opted not to, Apple respectfully requests that this Court dismiss all of Collision's claims of direct infringement, willful infringement, and induced infringement with prejudice.

## FACTUAL BACKGROUND

Collision sued Apple on July 20, 2026, alleging that Apple products that "provide 4G, 5G, or Wi-Fi connectivity" infringe Collision's Asserted Patents. Dkt. 1 ¶ 28. Collision alleges that Apple directly infringes and induces infringement (Dkt. 1 ¶¶ 33-38), and that such infringement "has been willful." Dkt. 1 ¶ 41. Three of the four Asserted Patents are expired: the '439 Patent expired on July 7, 2024, the '464 Patent expired on June 14, 2022, and the '665 Patent expired on May 24, 2025.

### A. Collision's Direct Infringement Allegations

Collision alleges that "Apple products sold in the damages period that provide 4G, 5G, or Wi-Fi connectivity infringe at least one claim of one or more of the Asserted Patents," (Dkt. 1 ¶ 28) and provides an unbounded "non-exhaustive and non-limiting" list of such products, including iPhones, iPads, Apple Watches, and Mac computers. Dkt. 1 ¶¶ 29-30. For each Asserted Patent,

Collision states merely that Apple has "directly infringed" the Asserted Patent by "at a minimum, using and testing in the United States Accused Products that infringe" the asserted method claim "during the patent's term." *See* Dkt. 1 ¶¶ 46, 55, 64, 74.

For three of the Asserted Patents (the '464, '439, and '665 Patents), the claim charts attached to Collision's Complaint aver that third-party Qualcomm chipsets purportedly "perform the methods described below when using" LTE, 4G, 5G, or Wi-Fi. *See* Dkt. 1, Ex. E at 1; Ex. F at 1; *see also* Ex. G at 1. The charts do not, however, identify a single specific allegedly infringing Qualcomm chipset, or even identify which Qualcomm chipsets are supposedly included in any specific Apple accused products. Instead, Collision cites to a 2019 Apple press release announcing settlement of litigation between Apple and Qualcomm and a "multiyear chipset supply agreement" that does not name any specific Qualcomm chipsets or connect the unnamed chips to Apple's accused products. *See* Dkt. 1, Ex. E at 1; Ex. F at 1; Ex. G at 1 (each citing Ex. 4). For the '190 patent, Collision alleges that "Apple devices use Multipath TCP and/or Wi-Fi Assist" to allegedly perform the claimed method. Dkt. 1, Ex. H at 1.

Collision's claim charts follow a similar pattern. For each limitation, Collision recites or restates the claim language, and then appends several screenshots, but does not provide an explanation of how such screenshots support Collision's infringement allegations or allegedly meet the recited claim limitations. For the '464, '439, and '665 Patents, Collision relies on numerous unexplained screenshots of Qualcomm patents and patent applications, without ever connecting those screenshots back to the claim language. *See, e.g.*, Dkt. 1, Ex. E at 19-35; Ex. F at 23-45; Ex. G at 14-37. Collision also makes no effort to show that any of those patents describes a particular accused Qualcomm chip. *See id.* For the '190 Patent, Collision includes a handful of screenshots from Apple's website and from a video, with similarly little to no explanation or

connection to the claims. *See, e.g.*, Dkt. 1, Ex. H at 3-11. And Collision relies on conclusory statements that merely track the claim language for elements of all four patents.

### B. Collision's Willful Infringement Allegations

Collision alleges that Apple's supposed infringement has been willful, based on alleged communications beginning in 2015 in which Collision "introduce[d] the Collision portfolio to Apple," and subsequently "over the ensuing years Collision had extensive discussions with Apple about the Collision portfolio." Dkt. 1 ¶¶ 23-24. But Collision provides no specifics, and its Complaint does not allege that in any of its communications with Apple, Collision actually accused specific Apple products of infringing the Asserted Patents. Rather, Collision's allegations focus on the entire Collision portfolio. *See, e.g.*, Dkt. 1 ¶¶ 23-26, 44-45, 53-54, 62-63, 72-73.

For example, Collision alleges that it "provided patent lists, explanations of the relevant technology and likely use cases for it, and detailed explanations of potential infringements or the types of features that would infringe Collision's patents." Dkt. 1 ¶ 25. But Collision never alleges that any pre-suit communication contended that the specific Asserted Patents here—the '439, '464, '665, and '190 patents—were infringed by any accused products. Rather, for the '665 and '190 patents, Collision merely alleges that it "identified its entire patent portfolio to Apple, including the ['665/'190] patent, and provided ample details to Apple about the origin of the patents, the likely use cases and relevant techniques, and Collision's ongoing development." Dkt. 1 ¶¶ 62, 72. Similarly, for the '464 patent, Collision alleges that it "identified its entire patent portfolio" and "family members of the '464 patent" to Apple but never alleges it identified the '464 patent itself. Dkt. 1 ¶ 44. And though Collision alleges that it "specifically identified the '439 patent and its techniques as particularly relevant to Apple's LTE and MIMO products" (Dkt. 1 ¶ 53), the Complaint gives no further detail and does not allege it ever informed Apple that any specific Apple product supposedly infringed the '439 patent.

### C. Collision's Indirect Infringement Allegations

Collision's indirect infringement allegations are similarly conclusory. For each asserted patent, Collision alleges only that Apple "induc[es] infringement by others, such as end-user customers, by, for example, encouraging its users to take advantage of the [4G, 5G, Wi-Fi, or Wi-Fi Assist and MPTCP] capabilities of the Accused ['464, '439, '665, '190 Instrumentalities]." Dkt. 1 ¶¶ 49, 58, 67, 77. Collision alleges that Apple induces that supposed infringement by: (1) "implementing the infringing features in its cellular and Wi-Fi products, encouraging its users to take advantage of those features within the United States" (Dkt. 1 ¶ 36); (2) providing "advertising, sales, and/or technical materials related to the Accused Products" that "contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause its subsidiaries, distributors, retailers, partners, cell-service providers, and end-user customers to directly infringe at least one claim of each of the Asserted Patents" (Dkt. 1 ¶ 37); and (3) providing "technical documentation and training materials to its subsidiaries, distributors, retailers, partners, cell-service providers, and end-user customers, and the public that cause end users of the Accused Products to utilize the products in a manner that directly infringe on one or more claims of the Asserted Patents," and that such activities "promote the sales of the Accused Products (i.e. through user manuals, product support, marketing materials, technical materials, and training materials) to actively induce the end users of the Accused Products to infringe the Asserted Patents." Dkt. 1 ¶ 38.

Collision did not, however, identify a single fact in support of any of these allegations. It did not cite, excerpt, or link any of these supposed advertising, sales, technical, or training materials. It identified no specific "invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause" (*id.*) any third parties to directly infringe the asserted patents. And it points to no specific statement or act that allegedly encouraged infringement.

### D. Apple Notified Collision Of The Insufficiencies In Collision's Complaint, But Collision Refused To Amend Its Deficient Allegations.

After receiving the Complaint, Apple sent a letter to Collision's counsel identifying deficiencies in the Complaint, including its failure to plausibly allege direct infringement by any accused Apple product, as well as its failure to plead facts plausibly showing knowledge of infringement for pre-suit willfulness and active steps for induced infringement. *See* Ex. 1. Apple requested that Collision amend its Complaint to provide more detail on the infringement allegations and cure other deficiencies. *Id.* Rather than amend, Collision opted to stand on its deficient Complaint. Ex. 2; Ex. 3. Thus, Apple brings this motion.

## LEGAL STANDARD

### A. Motion to Dismiss

Under Rule 12(b)(6), a complaint must be dismissed if it fails to set forth facts that, if accepted as true, would "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Direct Infringement

"[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. Am.*, 4 F. 4th 1342, 1353 (Fed. Cir. 2021). "[M]ere recitation of claim elements and corresponding

conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard." *Id.* at 1355.

**C. Willful Infringement**

"To state a claim for relief for willful patent infringement, a plaintiff must allege facts plausibly showing that the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 774 (W.D. Tex. 2022) (citations and quotation marks omitted). "Mere knowledge of the Asserted Patents is not enough" because knowledge of infringement is a distinct element. *Id.* at 777 (citing *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021)).

**D. Induced Infringement**

A claim for active inducement of patent infringement has three elements: (1) there must be direct infringement by a third party, (2) the alleged inducer must know that the induced acts constitute patent infringement, and (3) the inducer must take "active steps . . . to encourage direct infringement." *Hikma*, 608 U.S. at 590 (quoting *Grokster*, 545 U.S. at 936).

An inducement claim requires "active steps" intended to bring about the result of infringement. *Hikma*, 608 U.S. at 590. When assessing the plausibility of an inducement claim, courts should look for statements or actions designed to bring about the result of infringement, as opposed to conduct that merely could stimulate others to act. *Hikma*, 608 U.S. at 591 ("But statements ***designed*** to stimulate others form a narrower category than statements that ***could*** stimulate others.") (emphasis original). "All in all, inducement cannot be based only on 'vague' language 'combined with speculation about how [others] may act.'" *Id.* (citations and quotation marks omitted).

## ARGUMENT

Collision's Complaint fails to state any claim for relief and should be dismissed in its entirety. ***First***, the Complaint does not plausibly allege direct infringement by any accused product. Collision's pleadings do not allege facts sufficient to plausibly show that any accused product contains infringing third-party chips (Section I(A)), and do not allege facts sufficient to support Collision's boilerplate, conclusory statements for multiple claim limitations of the Asserted Patents (Section I(B)). ***Second***, the Complaint does not plausibly allege willful infringement under any theory, because the Complaint fails to allege facts sufficient to plausibly show that Apple had the requisite knowledge of infringement. ***Finally***, the Complaint alleges no facts showing that Apple took active steps to encourage infringement, requiring dismissal of Collision's claim for active inducement.

### I. THE COMPLAINT FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT

Collision's Complaint fails to state a claim for direct infringement. As explained below, Collision's charts for the '464 Patent, '439 Patent, and '665 Patent allege infringement by unspecified third-party Qualcomm chipsets, but do not allege facts sufficient to show that any specific Qualcomm chipset performs the claimed methods, or can be found in any Apple accused product. Additionally, Collision's claim charts for all Asserted Patents fail to allege facts or explanation sufficient to render Collision's conclusory and boilerplate statements plausible. These deficiencies render Collision's direct infringement allegations implausible and warrant dismissal.

#### A. Collision's Allegations About Third Party Functionality Are Speculative And Not Sufficiently Linked To Apple's Accused Products.

To state a claim for infringement, Collision was required to plausibly allege why each asserted claim is infringed ***by the accused products***. Collision's Complaint, however, misses that mark. For three of the Asserted Patents, Collision claims the infringing functionality is allegedly

performed by third party chips, but does not link any of its allegations to any specific chip or accused product.

Collision alleges the infringing functionality is performed by unnamed Qualcomm chipsets. Each of the claim charts for the ’464 Patent, ’439 Patent, and ’665 Patent relies on generic statements alleging that the products “include Qualcomm chipsets that” perform the alleged methods when using LTE, 5G and Wi-Fi. Dkt. 1, Ex. E at 1-2, Ex. F at 1-2, Ex. G at 1-2. None of those charts, however, identifies any specific “Qualcomm chipsets” (*id.*) that allegedly provide the supposedly infringing functionality. Collision does not cite to any technical materials, specifications, or data sheets for any Qualcomm chipset. Instead, Collision’s charts merely recite conclusory statements that the accused products have certain functionalities, and then append screenshots of 3GPP and IEEE standards specifications and Qualcomm patents and patent applications, without further explanation. *See, e.g.*, Dkt. 1, Ex. E at 19-35; Ex. F at 23-45; Ex. G at 14-37. But without identification of which Qualcomm chipsets supposedly perform those standards or practice those patents and patent applications—let alone what functionalities within those unnamed Qualcomm chipsets allegedly perform each asserted claim limitation—Collision fails to provide “notice as to what meets the limitations of that claim,” and therefore dismissal is appropriate. *See LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023) (direct infringement dismissed where the “complaint does not identify what device within [defendant’s accused product] comprises the corresponding limitation.”). Nor does Collision explain why Apple would be liable for method steps performed allegedly by the unidentified Qualcomm chips.

Collision also never explains why those Qualcomm patents or applications plausibly describe a chip in Apple’s accused products. Collision cites to a 2019 press release describing the

settlement of litigation between Apple and Qualcomm and referencing a "multiyear chipset supply agreement," but that statement does not link any specific, allegedly infringing Qualcomm chip with any accused Apple product. Ex. 4 (press release); Dkt. 1, Ex. E at 1-2, Ex. F at 1-2, Ex. G at 1-2. Accordingly, Collision's Complaint fails to "include factual allegations linking the allegedly infringing chip to the accused products." *Huang v. Amazon.com, Inc.*, No. 2024-1428, 2025 WL 314718, at *3 (Fed. Cir. Jan. 28, 2025). In *Huang*, the Federal Circuit affirmed dismissal of a complaint that "simply concludes, with no factual basis, that the supposedly infringing circuit in Figure 1 of Exhibit X1 exists in each of the accused products." *Id.* Like in *Huang*, Collision's allegations "simply assume that either all or a majority of cell phones have the infringing" chip or chips. *Id.* at *3. Collision's assertions about Qualcomm's chips are too speculative and too far attenuated from Apple's accused products—such as "iPad (all generations sold in damages period)" (Dkt. 1 ¶ 29)—to provide fair notice to Apple of the infringement allegations as to third-party functionality. *See LS Cloud Storage Techs.*, 2023 WL 2290291, at *4.

Collision's other sources, such as blog posts, do not provide the missing link—in fact, they contradict the infringement allegations in material ways. For example, the claim charts for the '464, '439, and '665 Patents all rely on the same *Macworld* article to connect the accused products to Qualcomm chipsets. *See* Ex. 5 (*Macworld* article); Dkt. 1, Ex. E at 2; Ex. F at 2; Ex. G at 2. But that article explains that Apple, not Qualcomm, developed the modem chip for the iPhone 16e, one of the very products the Complaint accuses of infringement. Dkt. 1 ¶ 29. Collision's reliance on a source that contradicts its own undifferentiated allegation that all accused products contain "Qualcomm chipsets" renders that allegation implausible. *See, e.g.*, *Bot M8*, 4 F.4th at 1354 ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim.").

Accordingly, Collision's direct infringement allegations for the '464 Patent, '439 Patent, and '665 Patent should be dismissed.

### B. Collision's Complaint Does Not Allege Facts Sufficient To Show How The Accused Products Meet All Claim Limitations, And Therefore Does Not State A Plausible Claim Of Infringement.

To adequately plead direct infringement, a plaintiff must do more than offer "screenshots of evidence without an explanation of how the evidence demonstrated that a claim limitation was met." *Interactive Content Engines*, 2026 WL 2837235, at *5 (citing *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020)). Yet that is precisely the level of deficient pleading in Collision's Complaint. As described above, for the '464 Patent, '439 Patent, and '665 Patent, Collision relies on screenshots taken from 3GPP and IEEE standards specifications and Qualcomm patents and patent applications, but provides minimal or no explanation as to how those screenshots support Collision's allegations. For the '190 Patent, Collision relies on a handful of screenshots from Apple's website and other sources but similarly fails to explain how those screenshots plausibly support its infringement allegations. What is more, Collision's conclusory analysis repeatedly fails to address all the elements of the asserted claims, as described in more detail for each patent below.

***The '464 Patent***: For the '464 Patent, the asserted claim requires "generating reliability information using a multiuser interference mitigation algorithm, ***the reliability information including confidence values for each user represented during the block***." '464 Patent, cl. 1. Collision speculates that "[c]arriers such as Verizon require various forms of multiuser interference techniques," but never explains where confidence values are provided for each of multiple users in a block of signal data in the unnamed Qualcomm chipsets, let alone the accused Apple products. Dkt. 1, Ex. E at 13-19. This fails to satisfy the pleading standards. *See, e.g.*, *Bot M8*, 4 F.4th at 1355 (affirming dismissal of direct infringement allegations where plaintiff "points

to different storage components in the allegedly infringing devices, it never says which one or ones satisfy the mutual authentication limitation."). And critically, Collision never explains how the accused products satisfy the claim limitation requiring "***the reliability information including confidence values for each user represented during the block***," at all. Dkt. 1, Ex. E at 13-19. In other words, Collision "merely recites that the defendant infringes a claim limitation but fails to identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation," and dismissal is appropriate. *Interactive Content Engines*, 2026 WL 2837235, at *3.

***The '439 Patent***: Like its deficient allegations for the '464 Patent, Collision's claim chart for the '439 Patent merely restates some elements of the claim, but fails to provide any explanation of how the accused products meet all the claim limitations. For example, the asserted '439 Patent claim requires "eliminating from each processing iteration consideration of those bits for which the estimate of the value thereof exceeds a predetermined threshold, whereby selected bit estimates exceeding the threshold are considered certain and are not used in the next iteration of processing of the multi-user detector." '439 Patent, cl. 1. Collision's chart includes a generic restatement of that claim language: "the Accused '439 Instrumentalities can eliminate different bits in its search based on a search space threshold, or, alternatively, will cease or limit searches based on a high confidence that a constellation point is correct in LTE, 5G, and Wi-Fi." Dkt. 1, Ex. F at 31. Collision then provides several pages of citations to Qualcomm patents but never explains how those patent excerpts demonstrate infringement. *Id.* Such conclusory allegations that "'merely track the claim language' . . . are therefore insufficient to give rise to a reasonable inference that the [accused products] practice[] the claims." *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-

00487-ADA, 2022 WL 23469, at *7 (W.D. Tex. Jan. 3, 2022) (citations and quotation marks omitted); *see also Interactive Content Engines*, 2026 WL 2837235, at *23.

***The '665 Patent***: As another example, the asserted '665 Patent claim recites "estimating timing, signal amplitudes, phases, polarizations, and identification of active channels for each of said signals in said overloaded condition." Collision alleges that the claim element is met "during channel estimation and creation of a matrix of channel estimates associated with weighting various signal paths," "in a dense LTE or 5G Network," or "alternatively" "on a set of signals intended for a UE in the small cell." Dkt. 1, Ex. G at 12. Those cryptic assertions are followed by nearly eight pages of unexplained screenshots of patent applications. Dkt. 1, Ex. G at 12-20. Again, Collision's "conclusory allegations . . . fail[] to support its entitlement to relief with any factual content." *VDPP, LLC v. Gen. Motors Co.*, No. 1:23-CV-00956-RP, 2024 WL 4958307, at *3 (W.D. Tex. July 22, 2024); *see also Interactive Content Engines*, 2026 WL 2837235, at *3.

***The '190 Patent***: Like its deficient allegations for the other Asserted Patents, Collision's claim chart regarding the '190 Patent fails to allege facts sufficient to show infringement of all asserted claim limitations. The last claim limitation of the '190 Patent recites "communicating the data via the selected link." Collision's claim chart for the '190 Patent for that limitation only contains a single unsupported sentence—"Multipath TCP and/or Wi-Fi Assist allows the device to continue communicating with the pertinent application on the chosen network link"—but provides no supporting evidence, citation, or analysis whatsoever:

| | |
|---|---|
| communicating the data via the selected link. | Multipath TCP and/or Wi-Fi Assist allows the device to continue communicating with the pertinent application on the chosen network link. |

Dkt. 1, Ex. H at 11. No purported "pertinent application" is ever identified. *Id.*

As another example, the asserted claim requires receiving "link selection information based on respective data costs . . . ***wherein the respective data costs includes respective data costs based***

***on past data cost information***." '190 Patent, cl. 14. Collision's chart merely restates that claim language, and then includes a handful of screenshots from Apple's website and a video—on the topics of speed and signal quality generally—but provides no explanation as to how those screenshots show the recited "respective data costs based on past data cost information." Dkt. 1, Ex. H at 3. Again, Collision's allegations that "'merely track the claim language' . . . are therefore insufficient to give rise to a reasonable inference that the [accused products] practice[] the claims." *Vervain, LLC*, 2022 WL 23469, at *7; *see also Interactive Content Engines*, 2026 WL 2837235, at *2-3.

For the reasons stated above, Collision's direct infringement claims for all Asserted Patents fail to comply with the pleading standards and this action should be dismissed.

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR WILLFUL INFRINGEMENT.

Collision's claims of pre-suit willful infringement fail to allege facts plausibly showing that Apple had the requisite knowledge of infringement, or that Apple took deliberate actions to avoid learning of infringement. Accordingly, such claims fail.

### A. The Complaint Does Not Plausibly Allege That Apple Knew The Accused Products Supposedly Infringed Any Asserted Patent.

Collision fails to allege facts plausibly showing that Apple had the requisite pre-suit knowledge of infringement of the specific Asserted Patents. It is well-settled law in this District that in order to state a claim of willful infringement, "a plaintiff must allege facts plausibly showing that the accused infringer: '(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.'" *BillJCo*, 583 F. Supp. 3d at 774. Here, Collision alleges only that, at various times beginning in 2015, Collision "identified its entire patent portfolio to Apple," allegedly including the Asserted Patents. Dkt. 1 ¶¶ 44, 53, 62, 72. But Collision carefully elides

any discussion of specific Apple products—it alleges only that Collision "provided patent lists, explanations of the relevant technology ***and likely use cases for it***, and detailed explanations of ***potential infringements or the types of features*** that would infringe Collision's patents." Dkt. 1 ¶ 25.

Collision's failure to allege any facts showing that any supposed pre-suit communications specifically identified any Apple product, let alone accused any specific Apple product of infringing any of the Asserted Patents, justifies dismissal. For example, in *BillJCo*, a court in this District dismissed claims of pre-suit willful infringement because, although plaintiff alleged it had sent a pre-suit notice letter, the plaintiff's pleadings amounted "only to allegations that [plaintiff] notified Apple of at least some of the Asserted Patents." *BillJCo, LLC*, 583 F. Supp. 3d at 777. Critically, the plaintiff did "not allege that BillJCo's June 2019 Letter notified Apple that it infringed the Asserted Patents or identified Apple products accused of infringement here." *Id.* So too here. For the '464, '665 and '190 patents, Collision alleges only that it made Apple aware of its "entire patent portfolio" as well as "family members of the '464 patent" (Dkt. 1 ¶¶ 44, 62, 72), but never alleges that it specifically informed Apple that any accused product allegedly infringed any specific patent. Collision's allegations do not show "more than a general knowledge of [Collision]'s patent portfolio," and dismissal is appropriate. *Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 661 F. Supp. 3d 643, 652 (W.D. Tex. 2023).

Collision's allegations regarding the '439 Patent are similarly deficient. Collision alleges that it "identified the '439 patent and its techniques as particularly relevant to Apple's LTE and MIMO products." Dkt. 1 ¶ 53. But Collision does not provide further facts showing what "particularly relevant" means in the context of Collision's pre-suit communications, let alone allege that it ever accused any products of supposedly infringing the '439 Patent. Collision's

failure to plead facts plausibly showing that it specifically "notified Apple that it infringed the Asserted Patents or identified Apple products accused of infringement here," justifies dismissal of its pre-suit willfulness claims. *BillJCo, LLC*, 583 F. Supp. 3d at 777.

**B. The Complaint Does Not Plausibly Allege Pre-Suit Willful Blindness.**

Collision also fails to allege facts plausibly showing that Apple was supposedly willfully blind to Collision's patent rights. A showing of willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). But Collision alleges no facts showing that Apple held the required subjective belief or took any "deliberate actions" to avoid confirming it. Instead, for each Asserted Patent, the Complaint includes the same cut-and-paste allegation:

> In the event Apple asserts that it was not aware of the ['464 / '439 / '665 / '190] patent or lacked the requisite knowledge and intent to induce infringement, Apple ***would have*** been willfully blind to Collision's patent rights. ***If*** Apple failed to review the ['464 / '439 / '665 / '190] patent despite the parties' extensive meetings and communications regarding Collision's technology, patent portfolio, and materials provided by Collision, ***it indicates that*** Apple has a policy or practice of avoiding patents despite an objectively high risk of infringement.

Dkt. 1 ¶¶ 45, 54, 63, 73.

Collision's recitation is pure guesswork. Collision alleges no facts that Apple supposedly "has a policy or practice of avoiding patents" (*id.*) or took any other deliberate actions to avoid learning of the supposed infringement. In *GreatGigz Solutions, LLC v. Freelancer Ltd.*, the court rejected a similarly "barren" allegation "on information and belief, that 'Defendant has a policy or practice of not reviewing the patents of others[.]'" No. 6:20-CV-00738-ADA, 2022 WL 22860429, at *7 (W.D. Tex. July 1, 2022) ("This naked assertion is insufficient to establish pre-suit willfulness."). There, as here, "Plaintiff's allegation could be copied and pasted into every

complaint as nothing in the allegation is germane to the facts, or lack thereof, in this case. That cannot suffice for a knowledge-based requirement with subjective belief." *Id.* In sum, Collision has not stated a claim under its deficient willful blindness theory, which should be dismissed.

### C. The Complaint Fails To State A Claim For Post-Suit Willfulness.

Collision appears to claim post-suit willful infringement, requesting in its Prayer for Relief that the Court issue "a judgment that Defendant's infringement has been ***and is*** willful." Dkt. 1 ¶ 80. But any such claims of post-suit willful infringement as to the '439, '464, and '665 Patents must fail, because each of those patents has expired. There can be no post-suit willful infringement because there is no post-suit infringement. *See Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994) ("Because the rights flowing from a patent exist only for the term of the patent, there can be no infringement once the patent expires."). As for the non-expired '190 Patent, the Complaint does not appear to allege post-suit willful infringement, stating only that "Defendant ***has*** willfully infringed the '190 patent." Dkt. 1 ¶ 72.

For the '190 Patent, even if Collision had attempted to plead post-suit willfulness, it fails to allege any facts plausibly showing culpability for willful infringement, i.e., bad-faith or egregious post-suit conduct. Courts in this District regularly reject post-suit willfulness claims absent such factual allegations. *See, e.g.*, *Skysong Innovations, LLC v. CrowdStrike, Inc.*, No. 7:25-CV-00040-DC-DTG, 2026 WL 454991, at *4 (W.D. Tex. Feb. 2, 2026), *report and recommendation adopted*, No. MO:25-CV-00040-DC, 2026 WL 451426 (W.D. Tex. Feb. 17, 2026) ("Additionally, the plaintiff has failed to allege any specific post-suit conduct that would rise to the level of malicious or bad faith. Rather, the defendants have continued to engage in the conduct accused of infringement while contesting the lawsuit."); *Datanet LLC v. Dropbox Inc.*, No. 6:22-CV-01142-OLG-DTG, 2023 WL 7118041, at *6 (W.D. Tex. Oct. 27, 2023) ("While

such notice is sufficient knowledge of the patents, it does not provide the type of culpability required for willfulness.”).

## III. THE COMPLAINT FAILS TO STATE A CLAIM FOR ACTIVE INDUCEMENT OF INFRINGEMENT.

The Court should also dismiss Collision’s threadbare assertion that Apple actively induced infringement by others. A claim for active inducement of patent infringement has three elements: (1) there must be direct infringement by a third party, (2) the alleged inducer must know that the induced acts constitute patent infringement, and (3) the inducer must take “active steps . . . to encourage direct infringement.” *Hikma*, 608 U.S. at 590 (quoting *Grokster*, 545 U.S. at 936). As explained above in Sections I and II, the Complaint fails to state a claim for direct infringement and fails to plausibly allege facts showing that Apple knew the Asserted Patents were infringed. Collision’s inducement claim additionally fails on the third element, as the Complaint does not allege sufficient “active steps” to encourage infringement.

An inducement claim requires “active steps” intended to bring about the result of infringement. *Hikma*, 608 U.S. at 590. Collision’s allegations fall far short of the legal standard for pleading “active steps” to induce patent infringement. *See id.* Collision was required to identify specific affirmative conduct or statements designed to cause others to infringe. *See Hikma*, 608 U.S. at 591 (“But statements ***designed*** to stimulate others form a narrower category than statements that ***could*** stimulate others.”) (emphasis original). Collision’s three generic allegations all merely describe routine product marketing behavior coupled with speculation as to how others may act:

- “Apple has indirectly infringed the Asserted Patents under 35 U.S.C. § 271(b) by actively inducing infringement by others, . . . by, for example, ***implementing the*** infringing ***features in its cellular and Wi-Fi products, encouraging its users to take advantage of those features within the United States***.” Dkt. 1 ¶¶ 36, 49, 58, 67, 77

- "For example, ***Apple's advertising, sales, and/or technical materials related to the Accused Products*** contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause its subsidiaries, distributors, retailers, partners, cell-service providers, and end-user customers to directly infringe at least one claim of each of the Asserted Patents, either literally or under the doctrine of equivalents. Apple's activities also ***encourage*** Apple's subsidiaries, distributors, retailers, partners, cell-service providers, and end-user customers ***to use features*** that infringe Collision's Asserted Patents, ***including the 4G, 5G, and Wi-Fi capabilities of the Accused Products***." Dkt. 1 ¶ 37

- "On information and belief, ***Apple has provided technical documentation and training materials*** . . . that cause end users of the Accused Products to utilize the products in a manner that directly infringe on one or more claims of the Asserted Patents, and engaged in such inducement ***to promote the sales of the Accused Products (i.e. through user manuals, product support, marketing materials, technical materials, and training materials)*** to actively induce the end users of the Accused Products to infringe the Asserted Patents." Dkt. 1 ¶ 38

Collision does not plead a specific statement or act that allegedly encouraged infringement. Collision's hollow claim that Apple's (unspecified) acts or statements supposedly "contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause [others] to directly infringe" (Dkt. 1 ¶ 37) is insufficient: it is merely a recital of the abstract types of conduct that could support inducement, with no supporting facts. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, Collision's claim for active inducement must be dismissed.

## CONCLUSION

For these reasons, Collision's Complaint fails to state any claim for relief and should be dismissed in its entirety with prejudice.

Dated: September 25, 2026

By: */s/ Karim Z. Oussayef*

Karim Z. Oussayef (NY Bar No. 4681334)
Lee J. Matalon (Texas Bar No. 24117858)
Ido Sadeh (NY Bar No. 6100572)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
koussayef@desmaraisllp.com
lmatalon@desmaraisllp.com
isadeh@desmaraisllp.com

Kyle Curry (CA Bar No. 341242)
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Telephone: 415-573-1900
Facsimile: 415-573-1901
kcurry@desmaraisllp.com

*Attorneys for Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

I certify that a copy of this document (including all attachments) has been served upon all counsel of record for the parties electronically via CM/ECF on this day.

Date: September 25, 2026

*/s/ Lee J. Matalon*
Lee J. Matalon